PADDINGTON PARTNERS, Plaintiff,

v.

Jean–Louis BOUCHARD, Herbert A. Denton, Defendants,

Econocom Finance NV; Econocom International N.V., Defendants–Appellants,

Jeffries & Company, Inc., Defendant–Appellee.

Nos. 1815, 1818, Dockets 93–9324, 94–7090.

United States Court of Appeals, Second Circuit.

Argued June 20, 1994.

Decided Aug. 22, 1994.

**1134**

Lisa Klein Wager (John M. Vassos, Martin J. Murray, Morgan, Lewis & Bockius, New York City, of counsel), for defendant-appellee.

Chavie N. Kahn (Ira S. Sacks, Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel), for defendants-appellants.

Before: VAN GRAAFEILAND and LEVAL, Circuit Judges, and ROBERT W. SWEET, Senior District Judge.[*]

SWEET, Senior District Judge:

Econocom Finance N.V. and Econocom International N.V. (collectively, "Econocom") have appealed from amended judgments of the United States District Court for the Southern District of New York, Barbara A. Lee, United States Magistrate Judge, entered November 16, 1993, and December 16, 1993, granting Jeffries & Company, Inc. ("Jeffries") summary judgment on its cross-claim for indemnification against Econocom for attorneys' fees (the "Cross Claim"), together with prejudgment interest on these fees. For the reasons set forth below, these judgments are affirmed in part and vacated in part.

## BACKGROUND

In 1987, Econocom engaged Jefferies, pursuant to a Dealer–Manager Agreement (the "Dealer–Manager Agreement"), to act as its investment banker in connection with Econocom's efforts to acquire the stock of Decision Industries Corporation ("Decision"). Econocom negotiated the purchase of a block of Decision stock from an entity called Paddington Partners ("Paddington").

The stock purchase agreement provided that Econocom would pay Paddington the market price for its Decision stock. In addition, Econocom agreed that, if it announced a tender offer for Decision within 180 days after purchasing Paddington's Decision stock and consummated its tender offer or subsequently divested its Decision shares, Econocom would pay Paddington 50% of the difference between the price at which Econocom bought the shares from Paddington and either the amount it paid for Decision stock in the tender offer or the amount it received for selling its Decision stock to a third party (the "upside protection").

On the day after Econocom purchased Paddington's Decision stock, Econocom announced a tender offer for 100% of Decision's outstanding stock. A bidding war ensued, and Econocom ultimately decided to withdraw its tender offer and to sell its Decision stock to a rival suitor. As Econocom's sale of its Decision stock closed after the passage of the 180 days referenced in its stock purchase agreement with Paddington, Econocom declined to pay Paddington the upside protection.

In February 1988, Paddington commenced this litigation, suing Econocom for breach of

[*] The Honorable Robert W. Sweet, United States Senior District Judge for the Southern District of New York, sitting by designation.

contract and for alleged violations of the federal securities laws and the Racketeer Influenced and Corrupt Organizations Act. Paddington's complaint also charged Jeffries with abetting Econocom's wrongdoing.

In Paragraph 12(a) of the Dealer–Manager Agreement (the "Indemnification Provision"), Econocom agreed to indemnify and hold Jeffries harmless for any losses, claims, damages, liabilities, and expenses, including attorneys' fees, arising out of, relating to, or based upon actions taken by Econocom with respect to its purchase of Decision stock or its tender offer. When and if it became necessary for Econocom to indemnify Jeffries for attorneys' fees, such indemnification was to "be made promptly against delivery of an invoice therefor."

Relying upon the Indemnification Provision, beginning in June 1988, Jeffries sent Econocom invoices for Jeffries' attorneys' fees in this litigation. Econocom refused to pay the invoices based upon its contention that Jeffries was not entitled to reimbursement or indemnification until such time as Jeffries was absolved of wrongdoing in connection with Paddington's claims.

In December 1988, Jeffries filed the Cross Claim against Econocom. On February 2, 1990, the District Court granted Paddington's motion for partial summary judgment against Econocom with respect to Paddington's breach of contract claim. On March 21, 1990, Econocom entered into a settlement agreement with Paddington, and on March 30, 1990, the District Court entered a stipulation dismissing Paddington's litigation against Econocom with prejudice. Following Econocom's settlement with Paddington, the case was referred to Magistrate Judge Lee to try to settle remaining claims and for general pretrial supervision.

In November 1990, Econocom filed an answer to Jeffries' Cross Claim, alleging, as affirmative defenses, failure to state a claim and "prematurity." In December 1990, Jeffries moved for summary judgment dismissing Paddington's claims against it, Econocom moved for summary judgment dismissing Jeffries' Cross Claim, and Jeffries cross-moved for summary judgment on its Cross Claim (Jeffries' "First Summary Judgment Motion").

In support of its First Summary Judgment Motion, Jeffries submitted affidavits which specified the amount of attorneys' fees incurred by Jeffries and the dates on which the invoices for such fees had been forwarded to Econocom. In its responsive papers, Econocom did not submit an affidavit pursuant to Rule 56(e), Fed.R.Civ.P., identifying factual issues precluding summary judgment, nor did it submit an affidavit pursuant to Rule 56(f), Fed.R.Civ.P., explaining why evidence essential to opposing summary judgment could not be presented. It did, however, note in its brief that it had taken no discovery on the Cross Claim and that it assumed that there would be discovery if it lost on the issue of prematurity.

On November 20, 1991, Magistrate Judge Lee heard oral argument on the three motions and dictated her opinion into the record, recommending that Paddington's claims against Jeffries be dismissed and that Econocom be ordered to indemnify Jeffries for its attorneys' fees in the amount of $646,438.91, representing fees incurred through February 7, 1991.

Magistrate Judge Lee found that Econocom's statement in its brief that summary judgment was unavailable because there had been no discovery was insufficient to preclude summary judgment, explaining that:

> Jefferies has submitted affidavits on personal knowledge as to the amount of legal expenses it has incurred.... Econocom has not controverted any of these allegations, nor has it submitted an affidavit under Rule 56(f) seeking additional discovery in order to controvert the evidence submitted by Jefferies.
>
> What Econocom has done is to put all its eggs in the basket of dismissal, arguing that Jefferies is entitled to no indemnification and, therefore, not considering the possibility of the need for a hearing on the amount of such indemnification....

(App. at 293.)

On December 11, 1991, Magistrate Judge Lee issued a written Report and Recommendation (the "Report") which incorporated by

reference her opinion dictated into the record on November 20, 1991. On December 26, 1991, Econocom filed its objections to the Report together with an affidavit of its counsel, Ira S. Sacks (the "Sacks Affidavit I"), which reiterated Econocom's position that under the Indemnification Provision indemnification was not available until Jeffries was absolved of wrongdoing.

The Sacks Affidavit I also stated that summary judgment was inappropriate in that there had been no discovery concerning the reasonableness of Jeffries' attorneys' fees. On September 1, 1992, the Honorable Shirley W. Kram adopted, in substantial measure [1] the Magistrate's Report and issued an order dismissing all claims against Jeffries, granting Jeffries summary judgment on the Cross Claim, and awarding Jeffries $646,438.91 in damages incurred through February 7, 1991. A judgment consistent with this order was entered on October 5, 1992 (the "1992 Judgment").

Econocom persisted in its nonpayment of Jeffries' attorneys' invoices and, in November 1992, Jeffries filed a second motion for summary judgment (the "Second Summary Judgment Motion") seeking attorneys' fees and expenses incurred from February 7, 1991, through November 14, 1992. The parties stipulated to be bound by Magistrate Judge Lee's decision on the summary judgment motion pursuant to 28 U.S.C. § 636(c).[2]

In opposition to this motion, Econocom submitted a second affidavit by Sacks (the "Sacks Affidavit II"), opposing summary judgment on the grounds that there had been no discovery concerning the reasonableness of Jeffries' attorneys' fees subsequent to February 7, 1991, for which discovery there was a "plain need."

On February 8, 1993, Magistrate Judge Lee granted Jeffries' Second Summary Judgment Motion and awarded Jeffries its damages incurred during the period from February 7, 1991, through November 14, 1992, in the amount of $289,491.65. Judgment was entered by the Clerk of the Court on March 22, 1993 (the "1993 Judgment").

After the 1993 Judgment was entered, Econocom filed a Notice of Appeal. The 1993 Judgment was defective in a variety of respects,[3] and following conferences with the Staff Counsel's Office for the Second Circuit, the parties stipulated to the withdrawal of Econocom's appeal in order to address the need for a corrected judgment. Once again, the parties stipulated that any motions to correct the judgment would be submitted to Magistrate Judge Lee for a final decision pursuant to 28 U.S.C. § 636(c). Thereafter, Jeffries moved pursuant to Rule 60, Fed. R.Civ.P. ("Rule 60") to correct the 1993 Judgment.

On November 1, 1993, Jeffries' Rule 60 motion was granted and prejudgment interest in the amount of $53,252.55 was awarded on the 1993 Judgment, which judgment was amended to reflect the district court's decision on November 15, 1993. Pursuant to the Court's instruction, Jeffries thereafter moved pursuant to Rule 60 to correct the 1992 Judgment. Magistrate Judge Lee granted that motion as well and amended the 1992

**1.** The District Court did not adopt Magistrate Judge Lee's recommendation of sanctions in connection with an allegedly false affidavit submitted by Econocom's president.

**2.** 28 U.S.C. § 636(c) provides, in relevant part, that:

> (1) Upon the consent of the parties, a ... United States magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case....
>
> \*   \*   \*   \*   \*   \*
>
> (3) Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals

> from the judgment of the magistrate in the same manner as an appeal from any other judgment of a district court.

**3.** The March 1993 Judgment's alleged deficiencies were that it did not specify the amount of attorneys' fees that had been awarded; did not contain adequate language for it to constitute a final judgment pursuant to Rule 54(b), Fed.R.Civ. P., which the parties agreed had been the District Court's intention; did not include an award for pre-judgment interest; did not set forth that the district court would retain jurisdiction over the case to determine the amount of future damages; misnamed one of the parties in the caption; and did not certify the judgment for enforcement outside the jurisdiction pursuant to 28 U.S.C. § 1963.

Judgment to include an award of prejudgment interest in the amount of $239,108.97 on December 16, 1993.

On December 15, 1993, and January 13, 1994, Econocom filed notices of appeal from each of the amended judgments. Argument was heard on Econocom's appeals on June 20, 1994.

## DISCUSSION

### The District Court's Refusal to Grant Econocom Additional Time for Discovery

Rule 56, Fed.R.Civ.P., which governs motions for summary judgment, provides in relevant part that:

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a contin-

uance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ A district court's denial of more time to conduct discovery pursuant to Rule 56(f) is subject to reversal only if it abused its discretion. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp,* 769 F.2d 919, 925 (2d Cir.1985); *Contemporary Mission v. United States Postal Serv.,* 648 F.2d 97, 105 (2d Cir.1981).

In opposing Jeffries' First Summary Judgment Motion, Econocom did not submit a Rule 56(f) affidavit, but made reference to a need for additional discovery in its memorandum in opposition to the motion. A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit, *Burlington,* 769 F.2d at 926 (collecting cases), and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate, *Burlington,* 769 F.2d at 926; *John Hancock Property & Casualty Ins. Co. v. Universale Reinsurance Co.,* 147 F.R.D. 40, 47 n. 15 (S.D.N.Y.1993); *Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Northwestern Nat'l Ins. Co.,* 778 F.Supp. 1274, 1280 n. 9 (S.D.N.Y.1991).

■ In addition, Judge Kram did not abuse her discretion in apparently refusing to consider the Sacks Affidavit I submitted with Econocom's objections to Magistrate Lee's report.[4] In objecting to a magistrate's report before the district court, a party has "no right to present further testimony when it offer[s] no justification for not offering the testimony at the hearing before the magis-

---

4. Judge Kram did not indicate specifically whether she was considering the tardy affidavit. However, she stated in her order accepting Magistrate Lee's report that she was granting Jeffries' motion for summary judgment "[f]or substantially the reasons set forth in the Report." (App. at 306.) In the Report, Magistrate Lee, by reference to her oral opinion, based her denial of additional time for discovery principally on Econocom's failure to submit a Rule 56(f) affidavit.

In addition, Econocom claims that "[t]he District Court adopted Magistrate Judge Lee's recommendation that Econocom had waived its right to object to the reasonableness of Jeffries' attorneys' fees by not submitting an affidavit explaining the need for such discovery under Rule 56(f)." (Econocom Br. at 14.) Even if Judge Kram did consider the Sacks Affidavit I, the discussion below with respect to the 1993 Judgment demonstrates that the District Court did not abuse its discretion in failing to grant Econocom additional discovery.

trate." *Pan Am World Airways, Inc. v. International Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (rejecting claim that district court had impermissibly denied opportunity to present additional testimony upon review of magistrate's report); *see also Alexander v. Evans,* 88 Civ. 5309, 1993 WL 427409, at \*18 n. 8, 1993 U.S.Dist. LEXIS 14560, at \*20 n. 8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate).

■ Even if a Rule 56(f) affidavit had been filed in opposition to the First Summary Judgment Motion, and with respect to the Second Summary Judgment Motion, the District Court did not abuse its discretion by refusing to grant additional time for discovery. This Circuit has established a four-part test for the sufficiency of an affidavit submitted pursuant to Rule 56(f). The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful. *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 422 (2d Cir.1989); *Burlington,* 769 F.2d at 926.

■ There is no provision in the Dealer–Manager Agreement affording Econocom the right to monitor the reasonableness of attorneys' fees subject to the Indemnity Provision. Econocom premised its entitlement to discovery on this issue on the "implied covenant of good faith and fair dealing under New York law [t]hat is implied into every contract." [5] (App. at 357.)

However, at oral argument on the Second Summary Judgment Motion, Econocom stated explicitly that it was not contending that there had been a breach of this covenant. The purpose of the requested discovery was to enable Econocom to determine whether it might have a claim that the fees were unreasonable. (App. at 357–58.) Econocom's argument is that it should be allowed to find out if it has a claim, rather than that it has a claim for which it needs additional discovery.

Such divagation is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure. *See Gray v. Town of Darien,* 927 F.2d 69, 74 (2d Cir.) ("In a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion'") (quoting *Contemporary Mission, Inc. v. United States Postal Serv.,* 648 F.2d 97, 107 (2d Cir.1981)), *cert. denied,* —— U.S. ——, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991); *Capital Imaging Assoc. v. Mohawk Valley Medical Assoc.,* 725 F.Supp. 669, 680 (N.D.N.Y.1989) (citing *Waldron v. Cities Serv. Co.,* 361 F.2d 671, 673 (2d Cir.1966)) (citations omitted) (While "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case ... it does not permit a plaintiff to engage in a 'fishing expedition.'"), *aff'd,* 996 F.2d 537 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993); *Kashfi v. Phibro–Salomon, Inc.,* 628 F.Supp. 727, 735 n. 10 (S.D.N.Y.1986) (granting summary judgment after limited discovery, in part, because movant had not alleged that defendant was operated as shell corporation, so permitting further discovery on this issue would be unjustified).

A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. "Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative," and a "'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Sundsvallsbanken v. Fondmetal, Inc.,* 624 F.Supp. 811, 815 (S.D.N.Y.1985) (quoting *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981)).

**5.** Under New York law, a covenant of good faith and fair dealing is implied into every contract. *Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228, 230 (2d Cir.1991); *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989).

Econocom is not alleging a breach of the covenant of good faith and fair dealing in this case, and therefore neither of Sacks' Affidavits describe how the facts sought were reasonably expected to create a genuine issue of material fact relating to any issue raised in the litigation. The District Court did not abuse its discretion in finding that the Sacks Affidavits failed to meet the second prong of the *Burlington* test.[6]

In addition, the Sacks Affidavits failed to comport with the third and fourth prongs of the *Burlington* test. While the failure to comply with the third and fourth requirements is not automatically fatal to a Rule 56(f) affidavit, *see John Hancock,* 147 F.R.D. at 47 n. 15, the Sacks Affidavits make no reference to efforts that the affiant made to obtain discovery and why those efforts were unsuccessful.

Econocom has asserted that at a pre-motion conference on January 27, 1989, Judge Kram stayed discovery on the Cross Claim. (*See, e.g.,* Econocom Rep. Br. at 4; App. at 350.) The record of the proceedings in the District Court is barren of any record of such a stay.

The best evidence of the stay that Econocom offers is a March 30, 1990 letter from Econocom's counsel to Judge Kram, a copy of which was sent to Jeffries' counsel, referring to the stay. (Econocom Rep.Br. at 4.) Econocom offers no evidence that this "stay" was continued until the December 1990 filing of the First Summary Judgment Motion, nor does it offer any evidence that it made any attempt to address this issue with Judge Kram between the granting of the First Summary Judgment Motion on November 20, 1991 and the filing of the Second Summary Judgment Motion in November 1992, even though the first motion was granted over its objections that it had not had discovery.

Requests for discovery in the face of motions for summary judgment put forth by parties who were dilatory in pursuing discovery are disfavored, *Burlington,* 769 F.2d at 927, and Econocom has offered very little in the way of support for its claim that its access to discovery was denied or diligently pursued.

Even if Econocom did remain silent with respect to an unrecorded stay of discovery in this action, it offers no reason why neither of the Sacks Affidavits contains any reference to the stay, although such a reference could have explained why their efforts to obtain discovery had been unsuccessful. It was within the discretion of the District Court to determine that neither of the Sacks Affidavits meets the third or fourth prongs of the *Burlington* test.

### Jefferies' Motions to Amend the Judgments

Pursuant to New York Law, a party is entitled to "prejudgment interest" on damages for breach of contract from the date of the breach until the entry of final judgment. Under N.Y.C.P.L.R. § 5001 ("Section 5001"), "pre-decision interest" is computed from the date of breach, *Nu–Life Const. v. Board of Educ.,* 789 F.Supp. 103, 106 (E.D.N.Y.1992); *Tomanelli v. Lizda Realty, Ltd.,* 174 A.D.2d 889, 571 N.Y.S.2d 171, 173 (3d Dept.1991), until the verdict, report, or decision awarding damages is rendered, N.Y.C.P.L.R. § 5001(c). Under N.Y.C.P.L.R. § 5002 ("Section 5002"), "post-decision interest" is computed from the date the verdict, report or decision awarding damages was rendered to the date of entry of final judgment.

Jefferies did not move specifically for an award of pre-judgment interest in either of the Summary Judgment Motions, and neither Magistrate Judge Lee nor Judge Kram considered the issue prior to the entry of the

---

**6.** Magistrate Judge Lee did not, as Econocom alleges, base her decision solely on the fact that Econocom had not made contemporaneous objections to the bills. Rather, Magistrate Judge Lee expressed surprise that, after the Sacks Affidavit I raised the issue of the need for discovery regarding the reasonableness of Jefferies' attorneys' fees, Econocom failed to seek any information whatsoever from Jefferies on the basis of these fees in the interim between the filing Sacks Affidavit I and the Sacks Affidavit II. The Magistrate's discussion of these facts appears to have been offered as substantiation of her suspicion that the issue of the fees' reasonableness was "a last-minute issue that has been raised in general conclusory terms without factual foundation solely for the purpose of avoiding a summary judgment." (App. at 365.)

1992 or 1993 Judgments, both of which are silent with respect to pre-judgment interest.

In September 1993 (the "September Motion to Amend"), Jefferies moved, pursuant to Rules 60(a) and 60(b)(1), Fed.R.Civ.P., to amend the 1993 Judgment to add an award of pre-judgment interest. Magistrate Judge Lee granted this motion, claiming that this result was required in "the interests of justice," relying on this Court's decisions in *In re Frigitemp Corp.*, 781 F.2d 324 (2d Cir. 1986) and *Newburger, Loeb & Co. v. Gross*, 611 F.2d 423 (2d Cir.1979). In making her decision, Magistrate Judge Lee stated that Jefferies was entitled to pre-judgment interest pursuant to N.Y.C.P.L.R. §§ 5001 and 5002, and that any calculations required for the computation of such interest could be made on the basis of the affidavits that Jefferies had submitted in support of its motion. (App. 450–51.)

In November 1993, Jefferies filed a motion, pursuant to Rule 60(a), to amend the 1992 Judgment to add an award of pre-judgment interest (the "November Motion to Amend"). Magistrate Judge Lee granted this motion, referencing the grounds for granting the September Motion to Amend. (App. at 467.)

■ A district court's decision on a Rule 60 motion is reviewed for abuse of discretion. *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 459 (2d Cir.1994) (Rule 60(b)); *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 796 (2d Cir.1986) (Rule 60(a)). The record is unclear regarding the precise grounds upon which Magistrate Judge Lee granted Jefferies' Rule 60 motions but, regardless of the grounds relied upon, Magistrate Judge Lee abused her discretion by adding pre-decision interest to the Judgments. Post-decision interest was properly added to the Judgments pursuant to Rule 60(a).

■ Rule 60(a) provides that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party." To be correctable under Rule 60(a), the absence of an award of pre-decision interest in a judgment

must fail to reflect the actual intention of the court. *Frigitemp*, 781 F.2d at 327; *Lee v. Joseph E. Seagram & Sons, Inc.*, 592 F.2d 39, 42 (2d Cir.1979). An error in a judgment that accurately reflects the decision of the court or jury as rendered is not "clerical" within the terms of Rule 60(a). *Frigitemp*, 781 F.2d at 328.

Even if a plaintiff includes a demand for pre-decision interest in its complaint, "[s]uch requests obviously may be overlooked or denied, and the absence of a provision for [such] interest in any of the court's prejudgment orders is entirely consistent with the hypotheses that the court either was unaware of the request or intended simply to deny it. *In either case, the failure of [a] Judgment to award such interest is an accurate reflection of the court's decision*," and hence can not be corrected under Rule 60(a). *Id.* (emphasis added).

■ There was no argument on either of the Summary Judgment Motions regarding Jefferies' right to pre-decision interest, and at oral argument on the September Motion to Amend, Magistrate Lee made it clear that she was unaware that there was any request for pre-decision interest in the complaint. (App. at 394–95.) The lack of an award of pre-judgment interest in either Judgment was therefore an accurate reflection of the District Court's intentions at the time the Summary Judgment Motions were decided.

■ Moreover, the failure of the Judgments to include an award of pre-decision interest was not a "clerical" mistake within the terms of Rule 60(a) because, as Econocom has argued consistently, the District Court has never determined the dates from which such interest should run. (*See, e.g.*, Econocom Sept. 29, 1993 Mem. in Opp. at 6 n. 3; Econocom Nov. 19, 1993 Mem. in Opp. at 4 n. 2; Econocom Rep.Br. at 22 n. 31.)

Section 5001(b) provides that:

Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from

the date it was incurred or upon all of the damages from a single reasonable intermediate date.

Section 5001(c) provides that:

The date from which interest is to be computed shall be specified in the verdict, report or decision. If a jury is discharged without specifying the date, the court upon motion shall fix the date, except that where the date is certain and not in dispute, the date may be fixed by the clerk of the court upon affidavit. The amount of interest shall be computed by the clerk of the court, to the date the verdict was rendered or the report or decision was made, and included in the total sum awarded.

The Indemnity Provision obligated Econocom to indemnify Jefferies for attorneys' fees "promptly against delivery of an invoice therefor." The term "promptly" is not defined but, in arguing for a mechanism to provide that future invoices should be paid "promptly," Jefferies itself suggested that the term should be defined as "within twenty days" from presentment of an invoice. (App. at 367; Jeffries Dec. 14 Rep.Mem. at 8–9.) Magistrate Judge Lee refused to direct Econocom to pay Jefferies' future attorneys' fees within any specified period after presentation of an invoice, and there was apparently never a finding regarding the amount of time within which Econocom was required to reimburse Jefferies after receipt of an invoice. (App. 371–72.)

On its September Motion to Amend, Jefferies argued that it was entitled to "interest accruing from the date on which each payment was demanded from Econocom," (Jefferies Sept. 15, 1993 Mem. at 8, 11), citing *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff*, 638 F.Supp. 714, 721 (S.D.N.Y.1986). *Kramer*, however, involved an action by a law firm for past due fees on the theories of account stated and quantum meruit. The District Court therein held that, in such a case, interest under Section 5001 would be computed from the date that demand for payment was made.

The purpose of interest awarded under Section 5001 is to compensate adequately the recipient, rather than to penalize the paying party. *Esquire*, 804 F.2d at 796. If Econo-com was not obligated under the Indemnification Provision to reimburse Jefferies for its attorneys' fees until some time after Jefferies' presentation of an invoice, interest would not begin to run until that time. *Cf. Pioneer Food Stores Coop., Inc. v. Brokerage Surplus Corp.*, 70 A.D.2d 542, 543, 416 N.Y.S.2d 274 (1st Dept.1979) (where amount of loss for which insurance company is liable is payable 60 days after proof of loss, interest under Section 5001 runs from that date rather than from date of proof of loss); *see also Esquire*, 804 F.2d at 796 (vacating award of pre-judgment interest on damages for breach of contract calculated from the date of anticipatory repudiation, since this afforded windfall to plaintiff).

The Exhibit of John M. Vassos, upon which Magistrate Judge Lee instructed the clerk to compute Jefferies' pre-decision interest, (App. at 450), lists 26 invoices and computes pre-judgment interest from the dates that these invoices were individually submitted to Econocom for payment. If, as Jefferies itself argued, Econocom was not required to reimburse Jefferies for these invoices for some time after their receipt, the calculations in the Vassos affidavit are far from accurate. The absence of an award of pre-decision interest in the original Judgments was not a clerical error within the terms of Rule 60(a), because it could not be corrected without a finding of fact regarding the dates from which such interest should run.

■ The award of post-decision interest stands on a different footing. Section 5002 requires the clerk of the court automatically to calculate interest from the date of the decision awarding damages to the date of entry of judgment, and to add this amount to the judgment. "[T]he failure of the clerk to make this automatically mandated addition of a mechanically ascertainable amount of interest [is] a mere ministerial oversight remediable as a clerical error under Rule 60(a)." *Lee*, 592 F.2d at 42; *see also Frigitemp*, 781 F.2d at 327; *Goodman v. Heublein, Inc.*, 682 F.2d 44, 46 (2d Cir.1982). Since Rule 60(a) provided an appropriate basis for amending the Judgments to award post-decision inter-

est, the portions of the Judgments awarding such interest are affirmed.

■ Jefferies also moved for an award of pre-decision interest under Rule 60(b), which provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . .

The District Court had authority to amend the Judgments to add pre-decision interest under Rule 60(b). In *Lee*, the plaintiff moved for pre-decision interest two years after the entry of judgment. While foreclosing the district court's authority to amend the judgment under Rule 60(a), this Court stated that:

[I]t was the failure of plaintiffs to bring this statutory entitlement to the attention of the court until almost two years after the entry of the judgment that created the problem—not any clerical oversight or error.

The Federal Rules do not leave a plaintiff without a remedy in such a situation. . . . Fed.R.Civ.P. 60(b)(1) provides that a party may be relieved from a final judgment for "mistake, inadvertence, surprise, or excusable neglect."

*Lee*, 592 F.2d at 42; *see also Frigitemp*, 781 F.2d at 328 (stating, after finding Rule 60(a) did not allow for the addition of pre-decision interest to a judgment, that "[h]ad the Trustee simply taken care to determine whether all of the relief he requested, if not expressly denied, had in fact been granted by the court, he could have moved to alter the judgment within the time periods provided by Rule 59(e) or Rule 60(b)").

This Circuit has indicated, however, that since 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating "exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986); *see also Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd*, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991); *Salter v. Hooker Chem., Durez Plastic & Chem. Div.*, 119 F.R.D. 7, 8

(W.D.N.Y.1988). The most that Jefferies offered to demonstrate "exceptional circumstances" was a statement at page 10 of its September 15, 1993 Memorandum of Law in support of its September Motion to Amend, to the effect that it had not moved earlier for interest because it had not understood that the balance of its case was to be dismissed. Magistrate Judge Lee found this assertion of inadvertence unconvincing, pointing out that, regardless of whether the issue of future damages may have remained open, pre-decision interest on judgments for past damages would obviously have to be addressed in those judgments, and not at some future date. (App. at 405–06.)

At oral argument, Magistrate Judge Lee pointed out that Jefferies had not included any facts in its moving affidavit that could allow her to find that there had been mistake, inadvertence, surprise, or excusable neglect. (App. at 404–05, 412.) Jefferies conceded "[f]rankly, your Honor, I think the 60(a) argument is the stronger argument where most of the case law goes." (App. at 412.)

Still later, Econocom argued that "Jefferies' inadvertence doesn't entitle them for [sic] relief under Rule 60(b)(1)," to which the Court responded: "I think you are right about 60(b)(1). I don't think they made any record under 60(b) at all." (App. at 428.) The Magistrate acted within her discretion in denying Jefferies relief pursuant to Rule 60(b). *See Nemaizer*, 793 F.2d at 62 ("exceptional circumstances" not shown by attorney's misunderstanding of legal consequences of actions); *Ilardi v. Bechtel Power Corp.*, 106 F.R.D. 567, 570 (E.D.N.Y.1985) (same).

The record reveals that the Magistrate may have believed that the "interests of justice" afforded her independent authority to add pre-decision interest to the Judgments under our decisions in *Newburger* and *Frigitemp* since the Judgments had not been affirmed on appeal, and since the entitlement to such an amendment was "purely a question of law." (App. at 450–51.)

Magistrate Judge Lee's award of pre-decision interest was improper even under the

standard she enunciated, since pursuant to Section 5001, she was required to make a finding of fact regarding the dates from which such interest would run, in addition to applying relevant law.

In addition, the cases referenced by Magistrate Judge Lee do not support her grant of pre-decision interest in this case. In *Newburger,* the Second Circuit had remanded the District Court's damage award in a breach of fiduciary duty and civil conspiracy action for recalculation of damages and correction of a variety of errors. On remand, the District Court, *sua sponte,* added pre-judgment interest to the award on the basis of a partnership agreement to which the parties were subject. In upholding the District Court's discretion in this regard, this Court noted that the District Court's original judgment on damages had not been affirmed by the Circuit Court, but had been *reversed.* "The parties, when they went back to the district court on remand for a redetermination of damages, had no legitimate expectation that any issue relating to the final award ... had been finally decided." *Newburger,* 611 F.2d at 433.

In addition to affirming the District Court's grant of pre-judgment interest, this Court in *Newburger* awarded pre-judgment interest to the appellees in "the interests of justice," because the appellants had used the threat of prolonged litigation to effect a breach of fiduciary duty. The Circuit Court predicated its authority to make such an award on Rule 37, Fed.R.App.P., which provides, in relevant part, that "[i]f a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest." The damages recounted in the judgment in *Newburger* were modified by the Circuit Court, and the judgment was remanded for a second recomputation of damages. The Circuit Court therefore determined that "a grant of prejudgment interest sua sponte is consistent with the broad language of FRAP 37." *Newburger,* 611 F.2d at 434.

The disparate treatments afforded to the grants of pre-decision interest by the District Court and the Appellate Court in *Newburger* is telling. While the District Court's award of pre-decision interest was upheld when that award was made upon remand for a redetermination of damages, the Circuit Court justified its own action upon the textual authority of Rule 37. This distinction is consistent with other decisions of this Court that have addressed the subject.

In *Adams v. Lindblad Travel, Inc.,* 730 F.2d 89 (2d Cir.1984), this Court reversed and remanded the damage award in a breach of contract action for a redetermination of damages. Although the plaintiff had neglected at trial to ask the District Court for an award of pre-judgment interest, this Court, citing *Newburger,* held that the plaintiff could seek pre-judgment interest on remand, stating that "[s]ince we are remanding this case for a redetermination of damages, the parties have no legitimate expectation that the issues relating to the ultimate award have been finally decided." *Adams,* 730 F.2d at 93.

In *Frigitemp,* this Court vacated an award of pre-judgment interest granted upon a Rule 60(a) motion, but stated that:

The general principle established by *Lee* does not foreclose adding prejudgment interest in a new judgment where the initial judgment is not affirmed on appeal. *Thus, a motion for prejudgment interest may be granted when the initial judgment is vacated on appeal and the case is remanded for a recalculation of damages, see Adams v. Lindblad Travel, Inc.,* 730 F.2d 89, 93–94 (2d Cir.1984), *and the appellate court may award such interest* sua sponte *in the interests of justice, see Newburger, Loeb & Co. v. Gross,* 611 F.2d 423, 433–34 (2d Cir.1979)

*Frigitemp,* 781 F.2d at 328 (emphasis added); *see also Goodman,* 682 F.2d at 46 (stating that *Newburger* recognized that an *appellate* court could award prejudgment interest *sua sponte* when a district court's decision as to damages was still open on appeal).

Jefferies seeks approval of the expansion of the authority of district courts to allow them to amend judgments to add pre-decision interest at any time and without reference to the pleading and time requirements of Rule 60. The policies underlying this

Rule, however, require the confinement of such authority within the contours established by *Newburger* and its progeny.

As this Court has stated, "Rule 60 of the Federal Rules of Civil Procedure prescribes procedures by which a party may seek relief from a final judgment. Properly applied, the rule preserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time." *House v. Secretary of Health & Human Servs.*, 688 F.2d 7, 9 (2d Cir.1982); *see also Nemaizer*, 793 F.2d at 61 ("Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."); *Frigitemp*, 781 F.2d at 326–27 (noting that Rules 59 and 60 balance inherent tension between justice and finality, and "[t]o these ends, these Rules . . . place varying limitations on the time within which such motions may be made"); *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.) ("The provisions of [Rule 60(b)] must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of *all* the facts."), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2851. The appropriate balance between these competing policies is inherent in the structure and design of the rule itself. *See Frishberg v. Esprit de Corp*, 90 Civ. 5150, 1993 WL 403980, at *1, 1993 U.S.Dist. LEXIS 14038, at *6 (S.D.N.Y. Oct. 6, 1993) (Rule 60(b) "was designed to balance the ends of justice with the finality of judgments").

■ The Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure, and the precedents of this Court provide a broad array of remedies to the party who fails to receive pre-judgment interest to which they feel entitled. Within 10 days after entry of a judgment, a party may move under Rule 59(e) to alter or amend a judgment. A party may move for the addition of pre-decision interest to a judgment for a full year under Rule 60(b)(1), or within a "rea-

sonable time" under Rule 60(b)(6). This Court may, in the interests of justice and upon the authority of Appellate Rule 37, add pre-decision interest when a judgment is reversed or modified on appeal. Finally, a district court may add pre-decision interest to a judgment when the question of damages is reversed on appeal and the entire question of damages is remanded for reconsideration or recalculation.

■ The position urged by the appellees, that the District Court may, at any time, amend a judgment to add pre-judgment interest when such interest was not considered by the Court prior to the entry of judgment and regardless of the factual determinations required before such interest could be calculated, would effectively eliminate from Rule 60(a) the requirement that amendments be "clerical," or would eliminate the time and pleading requirements from Rule 60(b), as is evidenced by the present case. Jefferies' September Motion to Amend was predicated on Rules 60(a) and 60(b), and was granted on the basis of the "interests of justice." Jefferies thereafter made its November Motion to Amend on the basis of Rule 60(a), which was granted for the same reasons. Permitting the District Court such authority would reduce the pleading and time requirements of Rule 60 to the single requirement of the judgment's not having been affirmed on appeal, thereby destroying the balance between justice and finality that the drafters of Rule 60 carefully forged.

To the extent that the District Court granted Jefferies pre-decision interest in "the interests of justice," it abused its discretion. This record does not include facts that would support the reopening of the judgment in the interests of justice. *Compare Newburger*, 611 F.2d at 433. Since no grounds are proffered to support the District Court's award of pre-decision interest, those portions of the Amended Judgments awarding such interest are vacated.

### Econocom's Motion to Amend the Judgments

■ In support of both the First and the Second Summary Judgment Motions, Jefferies submitted affidavits referencing invoices for attorneys' fees that Jefferies had submitted to Econocom for indemnification. Neither the affidavits nor the bills which Jefferies paid indicate whether these fees were

incurred defending against claims brought by Paddington, or whether they were incurred in enforcing the Indemnity Provision. Neither the parties nor the District Court remarked on this fact prior to the granting of the First and Second Summary Judgment Motions.

In her oral Report and Recommendation on Jefferies' First Summary Judgment Motion, Magistrate Judge Lee stated that she would recommend judgment in favor of Jefferies in the amount of the invoices submitted to Econocom, but that "Econocom [could] seek relief pursuant to Rule 60(b), if it can meet the higher standards of that rule to establish that the amount should be lower." (App. at 294.) Econocom did not make a formal motion under Rule 60. However, in its September 29, 1993, Memorandum in Opposition to Jefferies' First Motion to Amend (the "September 29 Memorandum in Opposition"), Econocom stated that it:

[A]lso requests that this Court correct the March 1993 Judgment.... [I]f this Court finds that Jefferies is entitled to indemnification from Econocom for ... alleged attorneys' fees, Jefferies is not entitled to indemnification from Econocom of attorneys' fees expended establishing Jefferies' right to indemnification.... Accordingly, the March 1993 Judgment should, at the very least, be amended to award Jefferies indemnification from Econocom of only those attorneys' fees that Jefferies allegedly incurred in defending the claims asserted against it by Paddington Partners in the underlying action.

(Econocom Sept. 29 Mem. in Opp. at 2–3.)

Econocom devoted four pages of the September 29 Memorandum in Opposition to its argument that Jefferies' damages should be reduced by any amounts incurred in enforcing the Indemnity Provision, relying specifically on Rules 60(a) and 60(b)(6). (Econocom Sept. 29 Mem. in Opp. at 11–14.) Jefferies thereafter filed a reply memorandum, in which it devoted approximately three pages to refuting Econocom's claims in this regard. (Jefferies Oct. 13, 1993 Rep.Mem. at 8–11.)

Econocom explained on oral argument its reason for not moving separately. Since Jefferies had moved to amend the judgments,

Econocom believed that judicial economy would best be served if it were to include its requests for amendments in its responsive papers. (App. at 417, 431.)

At oral argument on the September Motion to Amend, Magistrate Judge Lee stated to Jefferies: "I want to know, first from [you] exactly what respects you want the judgment corrected or amended and then I have the impression that the opposing party is seeking to amend or correct the judgment in a different way." (App. at 389.) After hearing from Jefferies the amount of the damages which it believed the amended judgment should reflect, the Magistrate stated "I will hear from your adversary as to whether she disputes that number." (App. at 397.) Thereafter, addressing Econocom, Magistrate Judge Lee asked "you also want to have [the Judgment] amended in a different way, if I understood your papers.... [W]ould [you] go on to tell me you [sic] how you want it amended and why?" (App. at 415–16.)

The following colloquy then ensued:
ECONOCOM: [O]bviously, the failure to include an amount of damages, we dispute the amount of damages, if any, that should have been awarded.
COURT: What is the nature of the dispute? ... I will amend the judgment to specify a dollar amount of damages and given that I have ruled substantively, as I have which you will argue to the Court of Appeals, is there any serious dispute that the amount, the principal amount is $289,-481.65, setting aside the question whether they are entitled to interest on that?
ECONOCOM: Yes.
COURT: What is the dispute?
ECONOCOM: The dispute is that Jefferies was not entitled in any event to an indemnification of its attorneys' fees in establishing its right to indemnity.
COURT: Is that included in the $289,000?
ECONOCOM: Absolutely. The entire thing.
COURT: Okay. But isn't that the substantive argument? In other words, if the entire amount is something that you say is not allowable, then that's not a dispute

over the amount. That's a dispute over whether I correctly decided the substantive issue.

ECONOCOM: No. In our view, there are two separate issues because the right to indemnification is different than [sic] attorneys' fees in establishing that right and establishing the right to indemnification is under a whole separate body of case law than an indemnification agreement which includes language that arguably establishes the right to indemnification....

(App. at 416–18.)

Magistrate Judge Lee ultimately declined to address the substantive grounds of Econocom's argument. Since Econocom had not "made a 60(b)(6) motion with a factual showing," (App. at 419, *see also* App. at 417), Magistrate Lee decided that she was "not going to decide whether Jefferies is entitled to be reimbursed for its attorneys' fees in connection with enforcing the indemnification provision unless and until that question actually arises in the form of an application for fees clearly identified as such and the issue is fully briefed by both parties with reference to what the underlying contract provides and what New York law requires." (App. at 451–52.)

Magistrate Judge Lee acted within the scope of her discretion in apparently considering Econocom's September 29 Memorandum in Opposition to constitute a motion to amend the 1993 Judgment.[7] *Moore's* says of Rule 60(b) that, "[w]hen operating within the intendment of the amended Rule ... the courts should and do give a liberal construction to 60(b).... [S]ince nomenclature is unimportant, moving papers that are mislabeled in other ways may be treated as motions under Rule 60(b) when relief would be proper under that rule." 7 James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 60.18[8], at 60–138–39 (1993 ed.). While a motion is the usual procedure for obtaining

relief under Rule 60(b), "the court has power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." 11 Wright & Miller, *supra*, § 2865, at 226.

Courts in this Circuit have treated assertions in a memorandum in opposition to a summary judgment motion as sufficiently constituting a motion under Rule 60(b). *Theodore v. Coughlin*, No. 83 Civ. 6668, 1986 WL 11456 (S.D.N.Y. Oct. 7, 1986); *see also McLearn v. Cowen & Co.*, 660 F.2d 845 (2d Cir.1981) (treating motion under 60(a) as motion under either 60(b)(4) or 60(b)(6)); *Noland v. Flohr Metal Fabricators, Inc.*, 104 F.R.D. 83 (D.Alaska 1984) (treating Amended Notice of Dismissal served with no supporting memoranda or affidavits as motion made under Rule 60(b)).

Rule 7(b)(1), Fed.R.Civ.P., provides that a motion "shall state with particularity the grounds therefor." Wright & Miller say of this rule that:

[I]n practice the "particularity" requirement in Rule 7(b)(1) frequently is ignored by the federal courts. Many district judges tend to focus on whether any party has been prejudiced by the movant's lack of particularity and whether the court can comprehend the basis of the motion and deal with it fairly; as a result, courts generally avoid engaging in an overly technical evaluation of the papers on which the motion is based and grant or deny relief on the basis of the underlying merits of the petition.

5 C. Wright & Miller, *supra*, § 1192, at 42–43; *see also McLearn*, 660 F.2d at 849 & n. 4 (considering, in treating Rule 60(a) motion as Rule 60(b) motion, that defendants had notice of movant's Rule 60(b) claims and had opportunity to argue against them).

Econocom's September 29 Memorandum in Opposition suffices as a Rule 60 motion[8]

---

**7.** The precise consideration that Magistrate Judge Lee gave to the September 29 Memorandum in Opposition is not clear. After specifically asking Econocom how it would amend the damages in the March 1993 Judgment, the Magistrate thereafter stated that "[y]ou can't just come in and argue against an amendment that somebody wants and cite Rule 60(b)(6) where you haven't made a motion or any factual showing, and I am hearing for the first time how you think you might have framed the issue at the time of the

original motion if you had thought about it." (App. at 419.) However, the record indicates that Magistrate Judge Lee was willing to hear Econocom's argument that Jefferies' damages were not congruent with the invoices referenced in the affidavits submitted in support of its Summary Judgment Motions.

**8.** In the lack of precision which seems to have plagued this litigation, Jefferies' prayer for relief

since it identifies the alleged errors in the Judgments, specifically relies on Rule 60, and describes the corrections sought. Jefferies had notice of Econocom's request to amend the Judgments, as evidenced by their reply memorandum.

An appeal from the denial of a motion for relief under Rule 60 "brings up only the denial of the motion and not the [merits of the underlying] judgment itself." *Davis v. Musler*, 713 F.2d 907, 912 (2d Cir.1983); *United States v. Cirami*, 535 F.2d 736, 741 (2d Cir.1976); *Tinsley v. Bair*, No. 89–7527, 1989 WL 64253 (4th Cir. June 12, 1989); *Brotherhood of Ry, Airline & S.S. Clerks v. St. Louis S.W.R. Co.*, 676 F.2d 132, 139 (5th Cir.1982) (issue of damages computation not raised in opposition to summary judgment motion and first raised on Rule 60(b) motion not properly before Court of Appeals, since no appeal taken from denial of Rule 60(b) motion and, if such appeal had been taken, would be reviewed only for abuse of discretion in denying Rule 60(b) motion).

■ Econocom's requested relief was not properly sought under Rule 60(a), since the District Court did not consider the issue on the Summary Judgment Motions, and the findings of fact regarding the intended meaning of the Indemnification Provision and regarding what portion, if any, of the bills that Jefferies submitted to Econocom reflected proscribed fees, made the requested amendment far from "clerical" in nature.

■ The relief sought by Econocom might appropriately be requested under Rule 60(b).[9] In *O'Tell v. New York, N.H. & H.R. Co.*, 236 F.2d 472, 474–75 (2d Cir.1956), the parties failed to raise at trial the proposition that settlement monies paid earlier to the plaintiff should be deducted from the jury's award of damages. This Court held that such a mistake was correctable on the grounds of mistake and inadvertence under Rule 60(b)(1). *See also United States v. Wissahickon Tool Works, Inc.*, 200 F.2d 936, 940–41 (2d Cir.1952) (Rule 60(b) can be used to add amounts erroneously left out of judgment); *Ivor B. Clark v. Hogan*, 296 F.Supp. 407, 410 (S.D.N.Y.1969) (failure of district court to determine exact amount of mortgagee's obligation to judgment creditor, which issue had not been raised at time judgment was entered, was "inadvertent judicial error" correctable under Rule 60(b)(1)); *Caraway v. Sain*, 23 F.R.D. 657 (D.Fla.1959) (Rule 60(b)(1) allows district court to apply set-off against judgment originally entered without objection of counsel).

Magistrate Judge Lee was correct, however, in pointing out that Econocom failed to make any showing of "exceptional circumstances" that would render Rule 60(b) relief appropriate. An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief, *Nemaizer*, 793 F.2d at 62, nor does the failure to interpose a defense that could have been presented earlier, *Bank of Am. Nat'l Trust & Sav. Assoc. v. Mamakos*, 509 F.2d 1217, 1219 (9th Cir.1975), nor does the failure to marshall all known facts in opposition to a summary judgment motion, *Patel v. Lutheran Medical Ctr.*, 775 F.Supp. 592, 598 (E.D.N.Y.1991).

on its Rule 60 motion referenced only the 1993 Judgment, although its affidavits and its memoranda argued for identical relief with respect to the 1992 Judgment. Similarly, Econocom's September 29 Memorandum in Opposition argued that the damages in both Judgments should be reduced by any attorneys' fees that Jefferies incurred in enforcing the Indemnity Provision. Magistrate Judge Lee refused to rule on any claims with regard to the October 1992 Judgment, instructing the parties to move separately with regard to that Judgment, which Jefferies did, requesting relief similar to that which it had sought with regard to the December 1993 Judgment. Econocom did not move to amend the October 1992 Judgment, but re-stated its arguments in this regard in opposition to Jefferies'

motion. (Econocom's Nov. 19, 1993 Mem. in Opposition at 6 n. 3.) In light of the extensive briefing on this issue with respect to both Judgments in the September 29 Memorandum in Opposition, this Court considers this Memorandum to have requested relief with regard to both Judgments.

9. In the September 29 1993 Memorandum in Opposition, Econocom references Rule 60(b)(6), while, as discussed below, the relief it seeks may have been more appropriately sought under Rule 60(b)(1). The failure to specify the correct provision of Rule 60(b) is not determinative in cases, such as the present one, where timeliness is not in question. *See Cirami*, 535 F.2d at 740–41.

Econocom offered no justification for its failure earlier to raise the issue of Jefferies' right to indemnification of attorneys' fees incurred in enforcing the Indemnification Provision. The District Court did not, therefore, abuse its discretion in concluding that relief under Rule 60(b) was not appropriate.

## CONCLUSION

For the foregoing reasons, the 1992 and 1993 Judgments are affirmed in part and vacated in part.